John DOE, Plaintiff-Appellant,

v.

Michael ELLIS, Defendant-Respondent.†

Court of Appeals

*No. 80–1772. Submitted on briefs April 27, 1981.—*
*Decided July 17, 1981.*
(Also reported in 309 N.W.2d 375.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Cheryl Rosen Weston* and *Cullen & Weston* of Madison, and *Conrad H. Johnson* and *Schlotthauer, Johnson, Mohs, MacDonald & Widder* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Charles R. Larsen,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

DYKMAN, J.   This action is for invasion of privacy. Plaintiff appeals from an order dismissing his complaint on the ground that the court lacked jurisdiction and that the complaint failed to state a claim upon which relief can be granted. The dispositive issue on appeal is whether the trial court was correct in concluding that plaintiff was required to serve notice of his claim upon the attorney general pursuant to sec. 895.45, Stats. (1977),[1] as a condition precedent to the bringing of this action.

Plaintiff's complaint alleges that he is confined at the Mendota Mental Health Institute in Madison.[2] It states that he filed a grievance complaining that he was denied certain products he had ordered, thus violating his right under sec. 51.61(1)(e), Stats., to the least restrictive conditions necessary to achieve the purposes of his commitment. The products are described as sexual devices and sexually-oriented films and printed matters.[3]

---

[1] Section 895.45, Stats. (1977), has been renumbered and is now codified at sec. 893.82. Sec. 30, ch. 323, Laws of 1979. The time limit for giving notice to the attorney general has also been extended to 120 days. Sec. 840, ch. 221, Laws of 1979.

[2] Defendant stated at the jurisdictional hearing that plaintiff was a resident of Mendota Mental Health Institute as the result of a conviction on a child molesting charge.

[3] Defendant more particularly described the material at the jurisdictional hearing as "pornographic magazines, sexual devices, a love doll, and a number of other articles."

The complaint further alleges that a written decision was issued regarding plaintiff's grievances. The decision described plaintiff as an individual "with a long history of molesting children," indicated that he is "obsessed with sex" and, by identifying the material plaintiff requested, implied the nature of the sexual practices in which he desired to engage. The complaint states that the decision is a medical record and was placed in plaintiff's patient's file.[4]

Defendant is a member of the state legislature. According to the complaint, an unknown individual furnished a copy of the decision to defendant, who in turn made copies available to media representatives. Plaintiff claims that defendant either disclosed his identity or failed to conceal his identity when he made the decision available. The complaint alleges two claims of invasion of privacy and one under 42 U.S.C. sec. 1983 for violation of his constitutional right to privacy.

Defendant moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted on the ground that the plaintiff had not served notice of the circumstances of the event giving rise to the claim on the attorney general as required by sec. 895.45, Stats. (1977).

Defendant testified at the jurisdictional hearing that he received a document in March, 1978, from an anonymous source which outlined a request by an individual for pornographic materials. Defendant investigated and discovered that a hearing examiner had ruled that plaintiff should be permitted to receive the sexually-related materials to which the complaint refers. Defendant took this information to the Speaker of the Assembly, who felt the matter should be brought to the attention of the entire body. At the time, the Assembly had been devoting much attention to the operation of mental health hospitals in Wisconsin, particularly with regard to the

---

[4] The decision has not been made part of the record on appeal.

cost of financing them. Defendant considered the hearing examiner's decision that plaintiff was entitled to receive sexually-related materials to represent a waste of taxpayers' money, and wanted the Assembly to discuss a request which was being made for an investigation of the matter.

In connection with defendant's speech to the Assembly to bring the matter to the attention of its members, defendant handed out press releases to persons representing the *Milwaukee Journal, Milwaukee Sentinal,* Associated Press, United Press International, and Post Publishing Company. He also gave those persons the front and back pages of the hearing examiner's report. Defendant testified that to the best of his knowledge, plaintiff's name was blacked out wherever it appeared in those pages.

Concluding that plaintiff was required to serve the notice provided by sec. 895.45(1), Stats. (1977), on defendant prior to commencing suit and that he failed to do so, the trial court dismissed the complaint for lack of jurisdiction and for failure to state a claim.

The following issues have been raised on appeal:

(1) Does the trial court lack jurisdiction over plaintiff's claims due to his failure to comply with sec. 895.45, Stats. (1977)?

(2) Does the complaint allege a violation of a constitutional right to privacy?

(3) Does legislative immunity bar the action?

Section 895.45(1), Stats. (1977), provides as follows:

No civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of such officer's, employe's or agent's duties, unless within 90 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written

notice of a claim stating the time, date, location and circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employe or agent involved.

Plaintiff did not serve the notice required by sec. 895.45 (1).

In *Mannino v. Davenport*, 99 Wis. 2d 602, 612, 299 N.W.2d 823, 828 (1981), the court stated:

[W]e conclude that compliance with sec. 895.45(1) is necessary to warrant recovery against a state employee. Where a plaintiff has failed to comply with the terms of the statute and this defect is properly raised by a motion for summary judgment, the defendant is entitled to prevail whether or not he has raised the matter of noncompliance in his responsive pleading.

Thus, if plaintiff was required to comply with the statute's notice provisions, the trial court correctly dismissed the complaint for failure to state a claim and for lack of jurisdiction.

Plaintiff was not required to comply with the notice provisions with regard to his claim brought pursuant to 42 U.S.C. sec. 1983.[5] The court in *Perrote v. Percy*, 452 F. Supp. 604, 605 (E.D. Wis. 1978), rejected a claim that sec. 1983 suits are subject to the statute's notice requirement:

Acceptance of the defendants' position would unacceptably elevate subtleties of state procedural law above the avenue of relief created by Congress for the protection of federal constitutional rights from deprivations by persons acting within state authority. *Donovan v. Reinbold,* [433 F.2d 738, 742 (9th Cir. 1970)].

[5] State courts have subject matter jurisdiction over claims based on 42 U.S.C. sec. 1983. *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 108, 280 N.W.2d 757, 760 (1979).

We agree that this state procedural statute cannot bar a congressionally created right to obtain relief for violations of federal constitutional rights by persons acting under color of law. We therefore reverse the trial court's order which dismissed plaintiff's sec. 1983 claim.

Plaintiff cites *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 280 N.W.2d 757 (1979), for the proposition that having found that the complaint states a claim upon which relief can be granted, we need not determine whether the facts alleged in the complaint provide a basis for recovery under other theories of law. Plaintiff would thus have us end our inquiry at this point. *Kurtz* does not require us to do so. *Kurtz* quotes *Attoe v. Madison Professional Policemen's Association,* 79 Wis. 2d 199, 205, 255 N.W.2d 489, 492 (1977), to the effect that a plaintiff is bound by the facts alleged in the complaint, not by the legal theory which underlies those facts. Thus, if the facts alleged state any claim upon which relief can be granted, we are "not necessarily compelled to determine whether a complaint states more than one [claim]."

The question in this case is not whether alternate legal theories exist under which plaintiff may be entitled to recover on the facts alleged in the complaint, but whether plaintiff is entitled to rely on state tort law theories in addition to his federal law theory, despite his failure to provide notice of his injury to the attorney general. Therefore, although we hold that plaintiff is entitled to proceed on his sec. 1983 theory of recovery, we find it necessary to determine whether recovery on his state law claims is barred by noncompliance with sec. 895.45, Stats. (1977).

When the trial court holds a jurisdictional hearing, the burden to establish the court's jurisdiction is on the party claiming that the court has jurisdiction. *Elm Park*

*Iowa, Inc. v. Denniston,* 92 Wis. 2d 723, 731, 286 N.W.2d 5, 9 (Ct. App. 1979). Plaintiff attempts to meet this burden by focusing on the word "duties" in the phrase "on account of any act growing out of or committed in the course of the discharge of such officer's, employe's or agent's duties." Plaintiff contends that defendant's duties did not include releasing his name to the press. He concludes that the notice requirement of sec. 895.45, Stats. (1977), is inapplicable because this is not an action brought against a state officer on account of an act committed in the course of the discharge of the officer's duties.

A statute "must be construed in light of its purpose." *Johnson v. Misericordia Community Hospital,* 99 Wis. 2d 708, 734, 301 N.W.2d 156, 169 (1981). "The purpose of sec. 895.45 (1), Stats., is to permit the attorney general to investigate a claim against an employee which might result in a judgment to be paid by the state under the indemnity statute, sec. 895.46." *Yotvat v. Roth,* 95 Wis. 2d 357, 367, 290 N.W.2d 524, 530 (Ct. App. 1980).

Section 895.46 (1), Stats., may be likened to a liability insurance policy for public officers and employees. It provides that the state or a political subdivision will pay damages and costs adjudged against a public officer or employee in a public or individual capacity if the officer or employee was "acting within the scope of employment."

The state has an interest in protecting itself against that liability. Accordingly, it is necessary that the state be given an early opportunity to investigate fresh facts and to prepare to defend the person against whom a claim is made. The state must have that opportunity regardless of whether the claim has merit, or will result in judgment, or arises out of circumstances which will compel the state to pay the judgment.

It is desirable that the attorney general have an opportunity to investigate claims which may ultimately result in payments from the public treasury pursuant to the indemnity statute, sec. 895.46, Stats. Investigation may disclose facts substantiating a defense to a claim or show that the employee is not entitled to indemnity because the employee did not act within the scope of his or her employment. *Yotvat*, 95 Wis. 2d at 368–69, 290 N.W. 2d at 531.

The function of sec. 895.45(1), Stats. (1977), is to provide the state with that opportunity by giving the attorney general notice of the particulars of the claim.

In order to effectuate the purpose of the statute, we must construe it broadly to provide the state with notice of claims for which it ultimately may not be liable. *Yotvat*, 95 Wis. 2d at 368, 290 N.W.2d at 531. The state will pay a judgment under sec. 895.46(1), Stats., only if the officer or employee was "acting within the scope of employment" but the state must be given notice of a claim under sec. 895.45(1), Stats. (1977), as to any act "growing out of or committed in the course of the discharge" of a state officer's, employee's or agent's "duties."

The latter test is broader than the former. *Yotvat*, 95 Wis. 2d at 368, 290 N.W.2d at 531. In *Butler v. Industrial Comm.*, 265 Wis. 380, 383–84, 61 N.W.2d 490, 492 (1953), a worker's compensation case, the court distinguished between the two tests and quoted from a Louisiana decision to the effect that tests not confined to "within the scope of employment" take into account employment "viewed from any aspect—its nature, conditions, obligations, and incidents." In *Employers Mut. Liab. Ins. Co. v. ILHR Dept.*, 52 Wis. 2d 515, 521, 190 N.W.2d 907, 911 (1971), the court noted that it "has held on many occasions that 'performing service growing out of and incidental to his employment' includes activity

that is reasonably required by the terms and conditions of his employment."

"Growing out of or committed in the course of the discharge of . . . duties" in sec. 895.45(1), Stats. (1977), creates a disjunctive test. It therefore should be construed more broadly than the conjunctive test construed in *Employers, supra.* As the test in sec. 895.45(1) is intended to enable the state to protect itself against an exposure to liability, it should be construed to include acts which are reasonably related to the duties of a state officer, employee or agent.[6]

Plaintiff's focus is therefore too narrow when he states that providing the press with his identity and the information contained in the hearing examiner's decision was not a duty of defendant's office. The appropriate question is whether dissemination of such information is reasonably related to defendant's duties as a state legislator. We conclude that it is. A legislator performs an important function of his office when he investigates what he believes to be waste in the spending of public funds. The results of such an investigation are often of interest to the legislator's constituents and to the general public. The United States Supreme Court has noted that informing the public of a legislator's activities and findings can be both "valuable and desirable." *Hutchinson v. Proxmire,* 443 U.S. 111, 133 (1979). Apprising the public of such information by disseminating it through the news media is reasonably related to the performance of the legislator's duties, and is therefore an act growing out of those duties.

Plaintiff was required to serve notice upon the attorney general as a condition precedent to the commence-

---

[6] The test has been broadly construed to include even intentionally tortious conduct. *Elm Park, supra.*

ment of the action with respect to the state law claims. Failure to comply with sec. 895.45 (1), Stats. (1977), requires dismissal of those claims. *Mannino*, 99 Wis. 2d at 614, 299 N.W.2d at 828. We accordingly conclude that the trial court did not err in dismissing the two counts of plaintiff's complaint which were based on state law.

Plaintiff may recover on his remaining sec. 1983 claim only if he can demonstrate that defendant acted under color of law[7] to deprive him "of any rights, privileges, or immunities secured by the Constitution. . . ." 42 U.S.C. sec. 1983. Plaintiff claims a violation of his constitutional right of privacy. Defendant contends for the first time on appeal that there is no constitutional right to privacy.[8] Arguments made for the first time on appeal are generally deemed to be waived. *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

Defendant's absolute assertion that there is no constitutionally guaranteed right of privacy is incorrect. The right was discussed as early as 1928 by Justice Brandeis, who referred to it as "the right to be let alone —the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting). The right has since been articulated specifically as one of privacy in several Supreme Court decisions. *See, e.g., Carey v. Population Services International*, 431 U.S. 678, 684 (1977) ; *Roe v. Wade*, 410 U.S. 113, 152 (1973) ; *Griswold v. Connecticut*, 381 U.S. 479, 483–85 (1965). While defendant is correct in his contention that the

---

[7] The parties have not raised the issue of whether defendant acted under color of law. We therefore do not decide that question.

[8] Defendant stated at the jurisdictional hearing that his motion to dismiss was based on an objection to jurisdiction and was not the equivalent of a demurrer or motion to dismiss for failure to state a claim.

right of privacy is not specifically mentioned in the Constitution, the right nonetheless exists and derives from the Constitution. *See Roe,* 410 U.S. at 152. *See generally,* L. Tribe, *American Constitutional Law* sec. 15–3 at 893–96 (1978).

The right of privacy is an emerging one, the boundaries of which are not yet clear. The right was restrictively defined in *Paul v. Davis,* 424 U.S. 693, 713 (1976), as encompassing only a narrow range of "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *See also Reilly v. Leonard,* 459 F. Supp. 291, 299–300 (D. Conn. 1978); *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 431, 279 N.W. 2d 179, 186 (1979). The Court in *Paul* held that Davis' constitutional right of privacy was not violated, and there was thus no basis for a sec. 1983 action, when law enforcement officials took his name from arrest records (on a charge which was later dismissed) and included it in a list of "known shoplifters" which was circulated to merchants.

The right of privacy was defined more expansively, however, in *Whalen v. Roe,* 429 U.S. 589 (1977).[9] In *Whalen,* the Court stated that the right of privacy protects two different kinds of interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen,* 429 U.S. at 598–600. The first interest, which is at issue here, was also the subject of *Whalen.* That case concerned computerized storage by the State of New York of records of medical prescriptions. The Court noted the

---

[9] Tribe has suggested that, in light of the Court's decision in *Whalen, Paul v. Davis* is best "understood as a case about federalism-based limits on the remedial powers of a federal court acting under § 1983 rather than as a repudiation of deep substantive principles . . . ." L. Tribe, *American Constitutional Law* sec. 15–17 at 971–72 (1978).

existence of a "threat to privacy implicit in the accumulation of vast amounts of personal information . . . much of which is personal in character and potentially embarrassing or harmful if disclosed." *Whalen,* 429 U.S. at 605. The Court further stated that the duty to avoid unwarranted disclosure of such information "arguably has its roots in the Constitution." *Whalen,* 429 U.S. at 605. The Court found, however, that New York's carefully drafted procedures governing accumulation and disclosure of the material adequately protected privacy interests.

It would be inappropriate for this court to determine on the record before us whether plaintiff's alleged injury stemmed from a violation of his constitutional right of privacy and is therefore redressable under sec. 1983. Further factual development is necessary in order to determine whether the information which was disclosed about plaintiff is the sort which falls within those "most intimate phases of personal life"[10] which have been held to be constitutionally protected. The opinion of the trial court regarding the relationship of these emerging principles of law to the facts of the case would also be a valuable aid to our review. We therefore decline to rule on defendant's contention and consider it waived in this court.

Defendant also argues for the first time on appeal that the doctrine of legislative immunity bars plaintiff's recovery. Our review of this issue would again be aided by further factual development regarding the information released and the nature of defendant's activities in releasing it. We therefore decline to address this issue.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded.

---

[10] *Rosenberg v. Martin,* 478 F.2d 520, 524–25 (2d Cir. 1973), *cert. denied,* 414 U.S. 872 (1973).