GERALD C. STERNBERG, Administrator Board of AttorneysProfessional Responsibility
You request a formal opinion on whether counsel appointed by the supreme court to prosecute lawyers for professional misconduct are agents of the state. If they are state agents within section 895.46 (1)(a), Stats., they are entitled to state indemnification for judgments rendered against them for conduct within the scope of their agency as well as to legal representation provided by the state. In addition, you ask whether these attorneys have any immunity from suit.
These counsel are appointed by the supreme court on recommendation of the Board of Attorneys Professional Responsibility (board). They are supervised by the board's administrator. Their compensation is determined by contract. The board itself was created by order of the supreme court on November 5, 1976. Supreme Court Rules (SCR) chapter 21 contains a preamble which reads as follows:
 The board of attorneys professional responsibility is established as an arm of the supreme court to assist in the discharge of the court's constitutional responsibility to supervise the practice of law and protect the public from professional misconduct by members of the bar.
The board carries out its investigative functions through the administrator and the professional responsibility committees. When the board determines that there is probable cause that there has been conduct constituting grounds for discipline within the meaning of SCR 21.05, disciplinary action is instituted by serving and filing a complaint with the clerk of the supreme court and the board is authorized to employe counsel to "serve, file and prosecute the complaint" in accordance with SCR 22.10
(1). Supreme Court Rule 21.15 provides:
 Official duties. Referees and members of the board, board staff, board counsel and members of district professional responsibility committees acting in the course of their official duties *Page 50 
under SCR chapters 21 and 22 are acting on behalf of the supreme court with respect to the statutes and supreme court rules and orders regulating the conduct of attorneys.
Section 895.46 covers "agents of any department of the state" in addition to officers and employes. The board is a department of the state within this statute. The preamble to SCR 21 states that the board is an arm of the supreme court and was created under the constitutional authority of the supreme court to supervise the practice of law and protect the public from professional misconduct by lawyers. Only the supreme court has authority to regulate the practice of law and to create public agencies and departments to carry out that authority and responsibility. See Lathrop v. Donahue, 10 Wis.2d 230,102 N.W.2d 404 (1960), aff'd, 367 U.S. 820 (1961); Integration of BarCase, 244 Wis. 8, 11 N.W.2d 604 (1943); and In re Cannon,206 Wis. 374, 240 N.W. 441 (1932).
Board counsel do not automatically become "agents" within section 895.46 (1)(a) simply because they help carry out the supreme court's responsibility of regulating the conduct of attorneys. Many others similarly serve essential governmental functions, such as highway and building contractors, and they are readily discernible as independent contractors not entitled to an indemnity from the state.
Two subissues emerge: (1) Does section 895.46 (1)(a) use the term "agent" so broadly as to include independent contractors? and, if not, (2) Are board counsel independent contractors?
The consistent administration of section 895.46 (1)(a) since its inception has excluded independent contractors from the definition of "agent." Thus, legal representation has been denied to court-appointed guardians-ad-litem and private attorneys appointed by the public defender board to represent the indigent in criminal prosecutions, even though a staff attorney performing the same service is protected as an employe. Indeed, the practical administration of this statute has been to construe the word "agent" most narrowly. Hence, even district attorneys have been denied representation despite their obviously critical role in the prosecution of crime as the attorneys for the state.
The supreme court itself has construed section 895.46 (1)(a) in a way that tends to exclude independent contractors from the meaning of "agent." In Cameron v. Milwaukee, 102 Wis.2d 448,456, *Page 51 307 N.W.2d 164 (1981), the court indicated the scope of the conduct covered by this statute is to be interpreted in light of the law of master-servant and respondeat superior. As you appreciate, those concepts historically have excluded independent contractors. See Paulson v. Madison Newspapers, 274 Wis. 355,361, 80 N.W.2d 421 (1957)
The court's reference to the doctrine of respondeat superior
cannot be interpreted literally and must be understood as an analogy only. For under that doctrine the master is liable for the torts of the servant committed while carrying out the master's business. But the doctrine of sovereign immunity prevents suit against the state for the torts of its servants.See Fiala v. Voight, 93 Wis.2d 337, 348, 286 N.W.2d 824 (1980). The indemnity provided by section 895.46 (1) (a) is not a waiver of the immunity from suit. Id. Rather, by the indemnity statute the state has chosen "gratuitously to shield" its officers, employes, and agents from losses. Cords v. Ehly, 62 Wis.2d 31,37, 214 N.W.2d 432 (1974). Moreover, the theory behind the doctrine of respondeat superior rests in part on a profit motive.
 The doctrine rests . . . upon the idea that where an enterprise is carried on for the financial benefit of a master it is considered just that he should answer for the tort of his servant in conducting it because he is deemed to profit financially by its being carried on.
Apfelbacher v. State, 160 Wis. 565, 575, 152 N.W. 144 (1915).
Despite these limitations on the court's use of the respondeatsuperior doctrine in construing the reach of the indemnity statute, it at the least marks the starting point for analysis. Accordingly, I conclude that the indemnity statute excludes independent contractors from the meaning of "agent" because they are excluded under the respondeat superior rule and have been so excluded under the long-standing and uninterrupted administrative application of the indemnity statute.
It remains to determine whether board counsel are independent contractors or agents in the master-servant sense used in this statute. Generally speaking, whether a person is an agent or independent contractor turns on such facts as the extent of control over the details of the work, whether the worker is engaged in a distinct occupation or business apart from that of the party desiring the *Page 52 
services, the place of work, the time of employment, the method of payment, the right of summary discharge, the nature of the business, which party furnishes the tools, and the intent of the parties. Pavalon v. Fishman, 30 Wis.2d 228, 236, 140 N.W.2d 263
(1966). The single most important factor is the extent of control retained over the details of the work. Kablitz v. Hoeft,25 Wis.2d 518, 521, 131 N.W.2d 346 (1964).
Although you do not expressly so state, I assume that the board counsel referred to are private sector attorneys whose practices include the representation of numerous different clients in a variety of matters. From that perspective, the board is simply another client. Further, although you state that the board administrator "supervises" their performance, I assume you refer to the same control any client retains over the policy factors of a case, not that board counsel have less control than attorneys generally over the details of how to provide a lawyer-like service. On these assumptions, board counsel are independent contractors under the traditional criteria.
The courts, however, have not consistently applied agency law to the attorney-client relationship. Some courts have held that the attorney is an independent contractor, not an agent within the respondeat superior doctrine. See, e.g., Williams v. Burns,463 F. Supp. 1278, 1284-85 (D. Colo. 1979). Our court, however, has held that the attorney-client relationship is one of agency.Clear View Estates, Inc. v. Veitch, 67 Wis.2d 372, 380,227 N.W.2d 84 (1975). On the other hand, our court has not invariably taken such agency status to a respondeat superior conclusion to hold the client fully accountable for the attorney's conduct. Rather than place a premium on the independence of counsel in controlling the details of the legal work, the court has placed a higher value on securing "substantial justice between the parties under all the circumstances." Paschong v. Hollenbeck,13 Wis.2d 415, 424, 108 N.W.2d 668 (1961). The court has even departed from the disclosed agency rule of master-servant law to hold the attorney, not the client, accountable for paying the fees of an expert retained for the client, recognizing that the attorney's dominance in the litigation process means the court and the parties "`may safely regard themselves as dealing with the attorney, instead of with the client.'" Theuerkauf v. Sutton,102 Wis.2d 176, 195, 306 N.W.2d 651 (1981). A review of the cases in other jurisdictions similarly reveals that therespondeat *Page 53 superior rule has been subordinated to other policy considerations unique to the attorney-client context. See 7A C.J.S. Attorney Client §§ 180-81, 190 (1980).
The dominant relationship test militates in favor of treating board counsel as agents in the master-servant sense of the indemnity statute and not as independent contractors. Ordinarily, board counsel will be targeted for suit only for starting action against a lawyer for professional misconduct. In instituting such suit, board counsel act only at the behest of the board and the supreme court. Focusing on this essence of the relationships, it is the mission and directive of the supreme court and the board that dominate, not board counsel. Stated in other terms, in the typical suit board counsel are merely nominal parties sued only for implementing the directives of the board and the supreme court; the board and the supreme court are the real, substantial parties in interest. Cf: Ford Motor Co. v. Treasury Department,323 U.S. 459, 464 (1945) (the state was the real, substantial party in interest in a suit against a state official to obtain a tax refund); Appel v. Halverson, 50 Wis.2d 230, 234-35,184 N.W.2d 99 (1971) (action to compel a state officer to pay money from the state treasury is against the state and is barred by the doctrine of sovereign immunity).
Therefore, so long as the board counsel act to carry out the function of the board and the court to regulate the practice of law, they will be regarded as agents of the state within the meaning of section 895.46 (1)(a). In that capacity they will be entitled to indemnification for any judgment rendered against them for conduct within the scope of their agency and they will be entitled to legal representation provided by the state.
It is necessary to note that even where board counsel are agents within the meaning of section 895.46 (1)(a), entitlement to representation and indemnity do not automatically follow. That statute provides for indemnity for judgments "in excess of any insurance applicable." In other words, the state is an excess indemnity, not a primary insurer. Further, whether represented by the attorney general or insurance counsel, the notice of injury requirements of section 893.82 must be strictly complied with.Tierney v. Lacenski, 114 Wis.2d 298, 338 N.W.2d 522 (Ct.App. 1983).
It is equally necessary to stress the limitations of this opinion. Board counsel will be treated as agents entitled to indemnity from *Page 54 
the state only where the dominant feature of the relationships is the directive of the board and the supreme court to proceed against lawyer misconduct. Insofar as the dominant feature is the attorney's own conduct, agency status is doubtful. Past experience with these cases indicates the directives and missions of the board and the supreme court usually dominate. However, determining what feature dominates depends on the facts and circumstances of a particular case. See Theuerkauf v. Sutton,102 Wis.2d 176, 195, 306 N.W.2d 651 (1981).
Finally, you inquire whether board counsel enjoy any immunities from suit. Insofar as the counsel act as agents of the state, Wisconsin common law holds that no liability attaches for the exercise of discretionary judgments even if the conduct constitutes an intentional tort. See Ibrahim v. Samore,118 Wis.2d 720, 348 N.W.2d 554 (1984). More generally, absolute immunity attaches to the exercise of the prosecutorial function. "[P]rosecuting attorneys, when acting within the scope of their prosecutorial functions, are absolutely immune from damages, the theory being that in so acting they are performing a quasi-judicial function." Riedy v. Sperry, 83 Wis.2d 158, 168,265 N.W.2d 475 (1978). This immunity does not turn on whether the prosecutor is a state employe or an independent contractor, for it is the function being discharged that is protected. SeeBriscoe v. LaHue, 460 U.S. 325, 342 (1983). Immunity is not confined to the decision to commence an action: it includes the attorney function of arranging and presenting evidence. See Butzv. Economou, 438 U.S. 478, 517-18 (1978). Immunity is not lost even if the prosecution was conspiratorially arranged, Dennis v.Sparks, 449 U.S. 24, 27 (1980); it is not lost by presentment of perjured testimony, Blevins v. Ford, 572 F.2d 1336, 1339 (9th Cir. 1978); and it is not lost by withholding exculpatory information. Imbler v. Pachtman, 424 U.S. 409, 431 n. 34 (1976). A prosecutor ordinarily is not immune, however, for nonprosecutorial decisions, such as mere administrative matters. An act is prosecutorial if it is "intimately associated" with the adjudicative process. See Ross v. Meagan, 638 F.2d 646, 648 (3rd Cir. 1981); C.M. Clark Insurance Agency, Inc. v. Reed,390 F. Supp. 1056, 1061-62 (S.D. Tex. 1975).
To summarize, subject to the qualifications and limitations noted and as a generalization only, board counsel who prosecute attorneys for professional misconduct are agents of the state within the *Page 55 
meaning of section 895.46 (1)(a) only to the extent the board's control of the particular conduct is dominant, and in discharging the prosecutorial function the attorney is immune from liability for damages.
BCL:CDH *Page 56